A03A2311. C. BROWN TRUCKING, INC. v. RUSHING.
(595 SE2d 346)

MIKELL, Judge.

Commercial trucking owner-operators, defined as those who lease their trucks and drivers to a motor common carrier,[1] are deemed independent contractors under the Workers' Compensation Act ("Act") and are not entitled to claim benefits from the carrier for work-related injuries.[2] We granted this discretionary appeal to clarify that the exclusion does not apply to the owner-operator's employees. Accordingly, we affirm the superior court's affirmance of the award of the appellate division of the State Board of Workers' Compensation ("Board") to the owner-operator's employee, Harold L. Rushing.

In reviewing a workers' compensation award, we construe the evidence in the light most favorable to the party prevailing before the Board.[3] So viewed, the record shows that Rushing was hired by Carlos Garza, an owner-operator, to perform work on property owned by Norfolk Southern Corporation ("the railway"). C. Brown Trucking, Inc. ("Brown"), a motor common carrier, had engaged Garza to provide trucks and drivers to assist in fulfilling Brown's contract with the railway. Garza's trucks carried placards labeled "C. Brown Trucking, Inc." on the side of the cab. On November 27, 2000, Rushing was injured when a train struck a truck that he was driving.

Rushing first filed a claim for workers' compensation benefits against Garza, but he was uninsured. Rushing then filed a claim against Brown, alleging that Brown was Rushing's statutory employer under OCGA § 34-9-8.[4] The administrative law judge

---

[1] OCGA § 40-2-87 (19).

[2] See OCGA § 34-9-1 (2).

[3] *Milliken & Co. v. Poythress*, 257 Ga. App. 586 (571 SE2d 569) (2002).

[4] OCGA § 34-9-8 (a) provides that a principal, intermediate, or subcontractor shall be liable for compensation to any injured employee to the same extent as the immediate employer. The injured employee must first file a claim against his immediate employer. If, as in this case, the immediate employer is uninsured, the principal or intermediate contractor becomes the "statutory employer" of the subcontractor's employee. See *Warden v. Hoar Constr. Co.*, 269 Ga. 715-716 (1) (507 SE2d 428) (1998).

("ALJ") found that, at the time of the accident, Rushing was performing work required by the contract between Brown and the railway, that Garza was Brown's subcontractor, and that the injury occurred on the premises on which Brown had undertaken to execute work through Garza. The ALJ thus concluded that Brown was Rushing's statutory employer. In addition, the ALJ found that Brown's defense was unreasonable and awarded Rushing $7,250 in attorney fees. Finally, the ALJ assessed a ten percent penalty against Brown under OCGA § 34-9-126 (b) for its wilful failure to carry insurance coverage, a 15 percent penalty under OCGA § 34-9-221 (e) for its untimely payment of benefits, and a $1,000 civil penalty under OCGA § 34-9-18 (c) for the aforementioned violations. Brown appealed the ALJ's decision to the Board, which vacated the ten percent penalty but otherwise adopted the ALJ's award. Brown appealed to the superior court. As no order was entered, the Board's award was affirmed by operation of law.[5] This appeal followed.

1. OCGA § 34-9-1 (2) defines the term "employee" for purposes of coverage under the Act. In 1991, that Code section was amended to provide, in pertinent part, that "[f]or purposes of this chapter, an owner-operator as such term is defined in Code Section 40-2-87 shall be deemed to be an independent contractor."[6] OCGA § 40-2-87 (19), in turn, defines an "owner-operator" as "an equipment lessor who leases his vehicular equipment with driver to a carrier." Brown argues that the employee of an owner-operator stands on the same footing as the owner-operator and cannot recover benefits from the carrier. We disagree.

Our goal in construing a statute is to ascertain the intent of the legislature.[7] In so doing, we apply

> the venerable principle of statutory construction *expressio unius est exclusio alterius*: the express mention of one thing implies the exclusion of another; or the similar maxim more usually applied to statutes, *expressum facit cessare tacitum*, which means that if some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned. The omission of any such reference from the Code subsection must be regarded as deliberate.[8]

---

[5] OCGA § 34-9-105 (b), (d).

[6] See *Upshaw v. Hale Intermodal Transp. Co.*, 224 Ga. App. 239 (480 SE2d 277) (1997) (discusses state law and federal regulations).

[7] *Mickens v. Western Probation Detention Center*, 244 Ga. App. 268, 270 (1) (534 SE2d 927) (2000).

[8] (Citations and punctuation omitted.) *Homebuilders Assn. of Ga. v. Morris*, 238 Ga. App. 194, 196-197 (518 SE2d 194) (1999).

OCGA § 34-9-1 (2) names a plethora of workers, such as firefighters, law enforcement personnel, government employees, and inmates. Its exclusion for owner-operators is clearly stated and omits any mention of the employees of such owner-operators. Therefore, we must regard the General Assembly's omission of the words "and their employees" as deliberate, and we hold that an employee of an owner-operator may recover benefits from the statutory employer.

Brown urges us to follow Tennessee and Alabama precedents, but they are distinguishable. In *Long v. Stateline Systems*,[9] for example, the Tennessee Supreme Court held that a common carrier did not owe workers' compensation benefits to the owner-operator's driver.[10] However, the Tennessee statute provides that "no common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity shall be deemed the 'employer' of a leased-operator or owner-operator of a motor vehicle or vehicles under a contract to such a common carrier."[11] The Tennessee court defined "leased-operator" as "a non-owner operating a vehicle pursuant to a lease agreement."[12] The Alabama statute defining "employer" similarly provides that "in no event shall a common carrier by motor vehicle . . . be deemed the 'employer' of a leased-operator or owner-operator of a motor vehicle or vehicles under contract to the common carrier."[13] Following *Long*, the Alabama Court of Civil Appeals construed this code section to mean that common carriers are not required to provide workers' compensation coverage for agents of owner-operators.[14]

The Tennessee and Alabama statutes explicitly exempt common carriers from providing coverage to leased-operators, while OCGA § 34-9-1 (2) does not. That distinction renders the case law from our sister states inapposite. Therefore, we hold that the Board did not err in ruling that Brown is Rushing's statutory employer.

2. Brown next contends that the award of attorney fees should be reversed even if it is Rushing's statutory employer. We disagree. First, we note that the ALJ awarded fees under OCGA § 34-9-108 (b) (1), based upon a finding that Brown defended the claim without reasonable grounds, as well as under OCGA § 34-9-108 (b) (2),[15] after

---

[9] 738 SW2d 622 (Tenn. 1985).

[10] Id. at 623.

[11] TCA § 50-6-106 (1) (A).

[12] *Long*, supra at 623.

[13] Ala. Code 1975 § 25-5-1 (4).

[14] *Alaplex Transp. v. Rossen*, 836 S2d 901, 907 (Ala. Civ. App. 2002).

[15] Section 34-9-108 (b) (2) states:
If any provision of Code Section 34-9-221, without reasonable grounds, is not complied with and a claimant engages the services of an attorney to enforce his or her rights under that Code section and the claimant prevails, the reasonable quantum meruit fee of the attorney, as determined by the board, and the costs of the proceedings may be assessed against the employer.

finding that Brown unreasonably failed to file a notice to controvert the claim as required by OCGA § 34-9-221 (d). The ALJ awarded $7,250 as the reasonable value of the services rendered by Rushing's attorney. On appeal, the Board vacated the assessment under subsection (b) (1) but upheld the fee award under subsection (b) (2) for Brown's failure to file the notice to controvert.[16]

Brown does not dispute the finding that it failed to file the requisite notice to controvert. Rather, Brown maintains that it should not have been assessed fees for this "technical violation" because it reasonably believed that it was not liable to Rushing. In support of this contention, Brown complains that it did not have counsel at the hearing before the ALJ. Brown's safety compliance manager testified at the hearing before the ALJ that its workers' compensation insurance carrier refused to provide a defense because Rushing was not Brown's driver. The ALJ offered Brown's witness a continuance to find an attorney, but she declined.

We find Brown's argument similar to that of the appellant in *Ga. Power Co. v. Safford*:[17]

> The Code [Section (OCGA § 34-9-221 (d))] requires the notice to be filed "(i)f the employer controverts the right to compensation. . . ." There is no specificity in the statute concerning the grounds on which the right to compensation is controverted. Taking appellant's reasoning to its logical extreme, an employer who believed that the employee was not injured or that the injury was not job-related would not have to file a notice to controvert, because such a notice would only be required if the claimant was actually injured and the injury was job-related. Since the apparent purpose of the notice is to set forth the reason the employer is controverting the right to compensation, adoption of appellant's reasoning would render the subsection wholly superfluous. We decline to adopt such an interpretation of the statute.[18]

The same result obtains here. The Board did not err in finding that Brown unreasonably failed to comply with OCGA § 34-9-221 (d).[19]

---

[16] The Board vacated the ALJ's sanctions for Brown's violation of OCGA § 34-9-126 (b) based on *Franks v. Avila*, 200 Ga. App. 733, 734 (2) (409 SE2d 564) (1991).

[17] 171 Ga. App. 387 (319 SE2d 537) (1984).

[18] Id. at 388 (3).

[19] See *Seabolt v. Beaulieu of America*, 255 Ga. App. 750, 752 (566 SE2d 444) (2002) ("Whether an employer has unreasonably defended against a claim in whole or in part is a factual determination. [Cit.] When supported by any evidence, findings of fact by the state board are conclusive and binding on reviewing courts, and judges lack authority to set aside an award based on disagreement with the board's conclusions. [Cit.]").

Brown cites easily distinguishable cases in support of its contention that the award is unsustainable. In *Waffle House v. Bozeman*,[20] we reversed the award of benefits because there was no evidence to support the Board's finding that the claimant's drug addiction resulted from the treatment of his initial compensable injury.[21] The award of attorney fees was reversed because the Board applied the wrong legal standard in assessing them and because the record contained "affirmative evidence of a reasonable ground for the employer to believe that no payment was due."[22] In *City of Atlanta v. Spearman*,[23] we reversed the Board's award of benefits and attorney fees to the claimant because he was injured in a parking lot that was not owned, controlled, or maintained by the employer.[24] In both cases, the employer ultimately prevailed on its defense to the employee's claims. That is not the case here, and we reject Brown's arguments.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 18, 2004.

*Greene, Buckley, Jones & McQueen, Daniel A. Angelo*, for appellant.

*Bates & Baum, Beverly B. Bates, Jeffrey S. Gilbert*, for appellee.

---

[20] 194 Ga. App. 860 (392 SE2d 48) (1990).
[21] Id. at 860 (1).
[22] (Citation and punctuation omitted.) Id. at 861-862 (2).
[23] 209 Ga. App. 644 (434 SE2d 87) (1993).
[24] Id. at 645 (1).